## D. W. Simmons et al. *v.* Jesse Parker.

**Subrogation — Discharge of Liability.**

> A purchaser of a decree rendered against himself in favor of a creditor, it appearing that he was the real debtor, cannot become subrogated to the rights of the creditor as against a secondary obligor.[1]

**Pleadings — New Matter Alleged in Answer.**

> It devolves upon the respondent to prove new matter alleged in an answer, and in the absence of proof, such new matter cannot avail.[2]

D. W. Simmons and F. C. Simmons purchased of Frick & Co. machinery amounting to $1,400, of which $1,050 was paid in cash, and balance was closed up in a note reserving title to the machinery in the form of a purchase-money lien. D. W. & F. C. Simmons borrowed of Jesse Parker $750 with which to consummate the deal and gave him a mortgage on all the machinery as security therefor. Default having been made in payment to said Jesse Parker, the machinery was turned over to him, and

---

[1]

A valid operative judgment may be assigned, yet if the assignee first pay it, it cannot afterward be assigned to him in consideration of the payment; the judgment is then extinguished. Rollins *v.* Thompson, 13 S. & M. 522.

Whether the Legislature can confer on the defendant the power to purchase the judgment absolutely for a sum less than is due on the judgment. *Quære?* But, conceding the power, yet the rigorous operation of the statute requires that a defendant in a judgment, claiming as a purchaser, should have done nothing in acquiring the right, inconsistent with the principles of equity and good conscience. If he can be protected in his purchase at all it must be as an unfortunate debtor, without the means to render that full justice to his creditor, to which the creditor was entitled; and he must have become the purchaser at a fair public sale. Hence, if the defendant interfere at the sale to prevent competition in the bidding, or, if it seems he were possessed of ample means to pay the debt, and he concealed them in violation of his duty, the sale to him will be void. Buckingham *v.* Riggs, 5 Cush. 751.

[2]

Where facts in avoidance, and not in response to the bill, are set up in the answer, they must be proven; the answer is evidence only when it is responsive to the bill. Brooks *v.* Gillis, 12 S. & M. 438; Miller *v.* Lamar, 43 Miss. 383.

Thus, if the bill charge that defendant executed a bond, and the answer set up payment, that allegation must be proven. Nichols *v.* Daniels, Walk. 224.

So of the bill seeking a rescission of a contract charge as the ground of the

Statement of the Case.

the notes and deed of trust cancelled. Afterward Frick & Co. instituted a suit in the Chancery Court of Copiah county against D. W. Simmons, F. C. Simmons, and Jesse Parker for the balance of the purchase money for the machinery, and obtained a decree against D. W. Simmons and F. C. Simmons for $369.96, and condemning the sale of said machinery in the hands of Parker and of land owned by D. W. Simmons. Execution was levied and all the property advertised for sale, whereupon Jesse Parker prosecuted an appeal to the Supreme Court. D. W. Simmons and F. C. Simmons purchased and paid to Frick & Co. the amount of the decree rendered against them, seeking thereby to become subrogated to the rights of the said Frick & Co., and attempted to foreclose the execution on the machinery. Parker filed a bill in the Chancery Court asking that the court adjudge the debt due Frick & Co. as being paid by Simmons, the real debtor, and praying that an injunction issue restraining the appellant from any further proceedings against him, and that the lien on the machinery be canceled. In answer to which bill appellants allege in defense that appellee was the real debtor to Frick & Co., he hav-

relief, want of title in the vendor, and the fraudulent concealment thereof, the answer of the vendor that he had procured the title before he sold, but had lost the memoranda of his purchase, and had neglected to take a conveyance, is not responsive to the bill, and is no evidence. Liddell *v.* Sims, 9 S. & M. 596.

And so when the bill charged that the transfer was made unconditionally, but did not call for any discovery as to its terms, and the answer denied this charge, and then set out the terms and conditions of the transfer; it was held that the statement as to the terms, etc., were not responsive to the bill, and not evidence. Dease *v.* Moody, 31 Miss. 617.

Where a bill to foreclose a lien for two notes avers that one is paid, and the answer denies that it is paid, but states that it is assigned, the denial of payment is responsive, and is evidence; but that the averment that the note has been assigned is not, and must be proved. Rodd *v.* Durbridge, 53 Miss. 694.

In an answer which admits the allegations of the bill, averments as to affirmative matters not responsive, but by way of avoidance, are not evidence. Hence, where distributees of the estate of a wife allege that the defendant, her husband, appropriated the personal estate of the wife, and has not accounted therefor, if he admits this, an averment in the answer that his wife gave him her estate, not being responsive, is not evidence. Dyer *v.* Williams, 62 Miss. 302; Parmele *v.* McGinty, 52 Miss. 483; Park *v.* Bamberger, 52 Miss. 565; Rodd *v.* Durbridge, 53 Miss. 694.

The burden of proof is on defendant as to affirmative matter. Osborne *v.* Crump, 57 Miss. 622.

ing assumed to pay said outstanding lien whenever it became due, and also alleging that part of the money used to pay off the judgment of Frick & Co. was obtained from a Mr. Hartman, and that he was part owner of said assigned decree.

From a decree sustaining the bill and adjudging the payment to Frick & Co., as settlement of the judgment, defendants appeal.

APPEALED from Chancery Court, Copiah county, E. G. PEYTON, Chancellor.

Affirmed, May 24, 1886.

*Attorney for appellant, A. C. McNair.*

*Attorney for appellee, Benj. King.*

Brief of A. C. McNair:

\* \* \* The pivotal in this case, I take it, is the relation, the legal relation, existing between the appellants and the appellee as to the debt due Frick & Co., and the relation of the machinery in question to that debt. If Parker, at the time he purchased the machinery from the appellants, expressly agreed in part consideration of the sale and delivery of the property to him by appellants to pay the debt, he became, as between the parties to the agreement, at least, the principal and the appellants the sureties. A *fortori* is such the case when the owners and holders of the debt, Frick & Co., recognized his assumption, and alleged and relied on it in the bill filed by them to enforce payment, and took and introduced at the trial evidence thereof. Brandt on Suretyship & Guaranty, §§ 20, 21, 22, 23, and 24; Miles *v.* Watson, 7 Sweeny (N. Y.), 374; Cornell *v.* Prescott, 2 Barb. (N. Y.) 16; Marsh *v.* Pike, 1 Sandf. Ch. 210; Smith *v.* Shelden, 35 Mich. 42; Calgrane *v.* Tallman, 67 N. Y. 95. \* \* \*

On this point in Jones on Mortgages, vol. 1, § 758, it is said: "The grantor becomes the surety of the purchaser and might file a bill against him and the mortgagee to compel the purchaser to pay the debt directly to the mortgagee, or at least so much of it as might be left after exhausting the mortgaged premises." 1 Jones on Mortgages, § 741, and authorities cited.

When the assumption of Parker to pay the debt came to the knowledge of the holders of the notes, Frick & Co., they were bound to observe, and they did observe, the relation of the parties with reference to the debt, as is shown by their endeavor through their attorney, Mr. Purser, to collect from Parker without suit, and in afterward alleging and proving the fact in the suit to subject the property in Parker's hands. Colgrove *v.* Tallman, 67 N. Y. 95.

This court has announced and enforced the same principle in Swan *v.* Smith, 57 Miss. 548. * * *

Parker purchased the property with full knowledge (adjudicated by the decree), of the fact that the holders of the notes and the appellants had designated and set apart this property as a security, a fund, from which payment was to be made and demanded and he is charged with notice of the equitable right of the holder of the mortgage to proceed against that fund in his hands, and of the right of the appellants to require the fund to be exhausted before resort is had to another. * * *

The principle is announced in the books, that when the owner of property incumbered by mortgage executed by him sells it subject to the incumbrance, in equity the property becomes the primary fund for the payment of the debt, and that the vendor occupies the position of a surety, and upon payment of the mortgage debt is entitled to be substituted to all the rights of the creditor the same as any other surety. Brandt on Suretyship & Guaranty, §§ 20, 24; Jackson *v.* Link, 51 N. Y. 333; Barnes *v.* Mott, 64 N. Y. 397; Calvo *v.* Davis, 8 Hun, 222; 1 Jones on Mortgages, § 740, and authorities cited. * * *

Having successfully demonstrated, I hope, that in either phase of the case, first, on the theory of an express assumption by Parker of the payment of the debt; secondly, of the purchase by him of the property subject to or incumbered by the mortgage (as to this there is no controversy), and that the machinery was the primary fund for the debt, it logically and equitably results that the appellants in order to protect the property of both or either, had the right, without an assignment of the decree, to pay the debt, and when they paid they were subrogated to all the rights, remedies, and securities belonging to Frick & Co., and had, it is claimed, the right to enforce the decree by selling the machinery to reimburse themselves for their outlay. This right of substitution, or subrogation, does not arise out of any contract between the parties

to that effect, but is an inherent or natural equity, growing out of the circumstance that the party secondarily liable has a right to call on the party primarily bound to be reimbursed for every outlay he is compelled to make in discharging the obligation. Conway v. Strong, 24 Miss. 665; Short v. Porter, 44 Miss. 533; Smith v. Swan, 57 Miss. 548; Osborne v. Nable, 46 Miss. 449; Berry v. Nicholls, 2 Harr. & J. 423; Merryman v. State, 5 Harr. & J. 423; Magee v. Leggett, 48 Miss. 139; McClurg v. Beirne, 10 Leigh, 394, 34 Am. Dec. 739; Potts v. Nathan, 1 Watts & S. —, 37 Am. Dec. 456; 1 Story's Equity & Jurisprudence, §§ 495, 582; Brandt on Suretyship & Guaranty, § 260 et seq.　*　*　*

In Swan v. Smith this court, speaking by Mr. Justice Chalmers, in passing on this question, uses this significant language: "It is well settled in such case that the surety will, in a court of chancery, be subrogated to all the liens, rights, and privileges of the holders of the debt discharged; our statute, Code 1871, section 2250, Code 1880, section 998, giving to sureties and indorsers who have judgments against themselves and others primarily bound the right to execution in their own names against such others is but the statutory adoption in courts of law of a well-settled equitable principle."　*　*　*

In this case there was a purchase of the decree by D. W. Simmons, one of the appellants, and a stranger F. H. Hartman, and an assignment of the decree by the holders, in writing, to McNair, and from McNair to Simmons and Hartman. By the purchase of the decree it was the intention of the parties to keep it alive, the written assignment (a verbal one would have been good) had that effect, and vested in Hartman and Simmons all the rights of Frick & Co., in and to the decree, and all remedies acquired and secured to Frick & Co. by it in law and equity. The assignment expressly authorizes the assignees to enforce the decree in the name of the assignors, and for this reason our position is the correct one. Brandt on Suretyship & Guaranty, § 271, and authorities cited.　*　*　*

The appellant sureties on paying the decree could have, in equity, compelled Frick & Co. to assign to them the decree. Staples v. Fox, 45 Miss. 667; Ceager v. Brengle, 9 Am. Dec. 516; Conway v. Strong, 24 Miss. 665.　*　*　*

But the evidence shows that Hartman, a third party, paid the sum of $200 of the purchase money of the decree, and that it was

his intention and the intention of his attorney to keep the decree alive. Whatever may have been the effect of the purchase by Simmons, the decree to the extent of Hartman's interest was by the assignment kept in force, and he had the right to enforce it to that extent at least. Morris *v.* Lake, 9 S. & M. 521.

It does not matter that the assignment was to Hartman, a stranger, and to D. W. Simmons. In Magee *v.* Leggett, 48 Miss. 139, where there was a partial assignment by the creditor to Mrs. Magee, it is said, on page 145: "The assignment to Mrs. Magee of part of the judgment gives her an equal right *pro tanto* with the creditor. She would be protected in a court of law (in which the assigned judgment in this case was rendered) in the use of its process to levy the debt compulsorily." * * *

The rights of appellants were not affected by their failure to answer or file a cross-bill in case of Frick & Co. Clark *v.* Wilson, 56 Miss. 753. * * *

The test of *res adjudicata* is said by this court, in Shattuck *v.* Miller, 50 Miss. 391, to be as follows: "To determine," says Judge Simrall, "whether a particular matter has been concluded by a former adjudication, the inquiry is, whether it was involved or could have been, if insisted upon in the former suit. If that suit included within its remedial power the subject of the second suit then it has become *res adjudicata*. For the law does not tolerate the splitting up of a cause of action and a separate suit on the fragments." Land *v.* Kline, 52 Miss. 341. * * *

Tested by the general principle announced, Mr. Parker is certainly estopped as to Frick & Co. * * *

So we take it that appellee is estopped to deny the contract and his consequent primary liability by the decree against Frick & Co. If he is estopped as to them, he is as to Thornton and Simmons, the assignees of the decree, who held it with all of its binding qualities as to Mr. Parker.

We submit that the evidence establishes conclusively that Parker made the promise. It is true he denied it but aside from the question of estoppel, if the court will compare his answer with his evidence in this and other points, it will be driven to the conclusion that he is certainly mistaken. * * *

The answer of appellants is sworn to. In such case the answer is evidence while bill is not, and the rule requiring two witnesses or one witness and corroborating circumstances to overthrow the

answer denying the allegations of the bill is in force. Code 1880, § 1949; Jack v. Bridewell, 51 Miss. 881; Waller v. Shannon, 53 Miss. 500.

The answer denied the equity of the bill, and for this reason the court should have dismissed the bill.   *   *   *

The second assignment of error is that Hartman was a necessary party and that the court should have compelled appellee, *ex mero motu,* to have made him a party. This assignment, we think, is not covered by section 1440, Code of 1880, nor is it militated against by Green v. Gaston, 56 Miss. 748.   *   *   *

Brief of Benj. King:

The position taken by appellee is this: That D. W. & S. R. Simmons' money was used by McNair in his pretended purchase from Frick & Co. of the final decree; that the clerk of the Chancery Court of Copiah county, who was the commissioner named to execute the decree, did not know that D. W. Simmons and S. R. Simmons' money was so used by McNair in that pretended purchase. If the commissioner could have known that the decree in reality belonged to D. W. & S. R. Simmons and that the assignment was taken in McNair's name for the time being, as he states, what would he have done. Why, clearly acting as a good and sensible officer, for such he was, he would have said, and very properly, Why, Mr. McNair, this satisfies the decree, this is the money of the defendants against whom the personal decree was, and they cannot purchase a decree against themselves.   *   *   *

Yet the defense of the bill of complaint is that, notwithstanding all this secret assigning and transferring of this Frick & Co. decree, which they virtually admit, yet they say that Parker undertook *by parol,* not *in writing,* to pay this debt, which was for the balance of the purchase money in the machinery due by D. W. & S. R. Simmons to F. P. Gravely, that he assumed to pay this debt of 360 odd dollars, which was owing by another. This is directly in the face of the Statute of Frauds. But supposing that this defense was not precluded by the Statute of Frauds, there was no defense made to the suit of Frick & Co. by D. W. & S. R. Simmons, a decree *pro confesso* was taken against them and all the defendants except appellee Jesse Parker who contested every material allegation of the bill of complaint in that case.   *   *   *

OPINION.— CAMPBELL, J., delivered the opinion of the court: ·

The advice given by Mr. McNair to his clients was sound, assuming that the facts were as they presented them to him, but the chancellor has found that the real purchaser of the decree was the real debtor, and while it was, in our opinion, doubtful what the truth is, we will not disturb the chancellor's conclusion. The gist of the controversy is whether Parker agreed with Simmons to pay the balance of the debt to Gravely or his assignees. The allegation to that effect in the answer is new matter, and it devolved on the respondent to prove it, and he did not do this to the satisfaction of the chancellor. We are unwilling to reverse, because Hartman was not made a party. If he has any rights they are unaffected by the decree.

*Affirmed.*